No. 28420

## The People of the State of Colorado v. Richard R. Williams

(611 P.2d 973)

Decided May 19, 1980.                                    Rehearing denied June 30, 1980.

Alexander M. Hunter, District Attorney, C. Phillip Miller, Chief Deputy, Dennis B. Wanebo, Deputy, for plaintiff-appellant.

J. Gregory Walta, State Public Defender, Norman R. Mueller, Deputy, for defendant-appellee.

*En Banc.*

JUSTICE ROVIRA delivered the opinion of the Court.

Pursuant to section 16-12-102, C.R.S. 1973 (now in 1978 Repl. Vol. 8), and C.A.R. 4(b), the People appeal a ruling of the Boulder County District Court that the offense of "holding hostages," as defined in section 18-8-207, C.R.S. 1973 (now in 1978 Repl. Vol. 8), is a specific rather than a general intent crime. We disapprove the ruling of the district court.

The criminal proceeding on which this appeal is based arose from the following events. On the evening of November 7, 1977, defendant-appellee Richard Williams (defendant) was arrested on charges of criminal mischief[1] and confined in the Boulder County jail. In the early morning hours of November 8, 1977, police officers entered the cell in which the defendant was being held. The defendant seized one of the officers, held a

---

[1] *See* section 18-4-501, C.R.S. 1973 (1978 Repl. Vol. 8).

knife to his ribs, and demanded that a pathway out of the jail be cleared. The defendant forced the officer to proceed with him out of the cell and into the main corridor of the jail building. As they approached an outside door, the officer suggested that the defendant "take a chance" and run. The defendant did so and was apprehended immediately outside the jail by another police officer.

At the time of his initial arrest and during the course of the above-described events, the defendant was under the influence of alcohol.

The defendant was charged with the crime of "holding hostages." *See* section 18-8-207, C.R.S. 1973 (now in 1978 Repl. Vol. 8). Prior to trial, defense counsel indicated the likelihood of reliance on the defense of inability to form specific intent by reason of voluntary intoxication. *See* section 18-1-804(1), C.R.S. 1973 (now in 1978 Repl. Vol. 8). The People requested a pretrial hearing on the availability of the defense with respect to the crime charged. After hearing, the trial court held that the crime of "holding hostages" was, as argued by defense counsel, a specific intent crime. Accordingly, the jury was instructed on the mental state of specific intent and on the affirmative defense of lack of capacity to form specific intent by reason of intoxication. The jury returned a verdict of not guilty, and the People brought this appeal.

## I.

The crime of "holding hostages" is defined in section 18-8-207, C.R.S. 1973 (now in 1978 Repl. Vol. 8), as follows:

"Any person in lawful custody or confinement within the state who, *while escaping or attempting to escape,* holds as hostage any person or by force or threat of force holds any person against his will commits a class 3 felony." (Emphasis added.)

The term "escape" is not specifically defined in the Colorado Criminal Code. The parties, however, agree that the term has the same meaning for purposes of section 18-8-207 as for purposes of section 18-8-208, C.R.S. 1973 (1978 Repl. Vol. 8), which proscribes multiple forms of the substantive crime of "escape."[2]

In 1966, this court was required to determine the meaning of the term "escape" as used in C.R.S. 1963, 40-7-53, which proscribed the crime of "escape by felons" but which did not specify the culpable mental state applicable to the offense described.[3] The court held that, in enacting section 40-7-53, the legislature had intended continued application of the culpable

---

[2] The form of the crime of "escape" pertinent to the facts of this case is set out in section 18-8-208(5), C.R.S. 1973 (1978 Repl. Vol. 8), as follows:

"A person commits a class 1 petty offense if, while being in custody or confinement and held for or charged with but not convicted of a misdemeanor or petty offense, he *knowingly* escapes from said custody or confinement." (Emphasis added.)

[3] C.R.S. 1963, 40-7-53, was superseded when the Colorado Criminal Code was enacted in 1971. *See* Colo. Sess. Laws 1971, ch. 121.

mental state ascribed to the crime of "escape" at common law, *viz.*, the specific intent to "evade the due course of justice." *Gallegos v. People,* 159 Colo. 379, 387, 411 P.2d 956, 960 (1966). The defendant in the case before us asserts that the meaning ascribed by the *Gallegos* court to the term "escape" as used in section 40-7-53 applies with equal force to the term "escape" as used in sections 18-8-207 and 18-8-208, C.R.S. 1973 (now in 1978 Repl. Vol. 8). We do not agree.

■ In 1971, the legislature enacted the Colorado Criminal Code, including the predecessor to the current omnibus "escape" statute. As originally enacted in 1971, section 18-8-208 did not specify a culpable mental state for any of the various forms of "escape." *See* Colo. Sess. Laws 1971, ch. 121, 40-8-208 at 459. However, during its 1977 and 1978 sessions, the General Assembly amended section 18-8-208, adding the mental culpability element "knowingly" to each form of the offense. *See* Colo. Sess. Laws 1977, ch. 224, 18-8-208 at 966; Colo. Sess. Laws 1978, ch. 44, 18-8-208 at 263,[4] It is apparent that, through these amendments, the legislature intended to substitute the mental state "knowingly," as defined in section 18-1-501(6), C.R.S. 1973 (1978 Repl. Vol. 8), for the judicially-recognized common law mental state "with specific intent to evade the due course of justice." The 1977 and 1978 amendments made the crime proscribed by section 18-8-208 one of general rather than specific intent,[5] consisting of the following essential elements:

(1) a voluntary act;

(2) which constitutes a departure from one of the forms of lawful custody or confinement specified in section 18-8-208;

(3) by a prisoner;

(4) committed "knowingly," *i.e.*, with an awareness on the part of the prisoner that his or her conduct is of the nature proscribed.

We reject the assertion of the defendant that the legislature intended to ascribe to the crime of "escape" *both* the mental culpability element

---

[4] Section 18-8-208(5), C.R.S. 1973 (1978 Repl. Vol. 8), the form of the crime of "escape" pertinent to the facts of this case, was so amended during the 1977 legislative session, effective July 1, 1977, and applicable to offenses alleged to have been committed on or after that date. *See* Colo. Sess. Laws 1977, ch. 224, 18-8-208 at 966; *ed.*, at 971.

[5] In this respect, we note that section 18-1-501(6), C.R.S. 1973 (1978 Repl. Vol. 8), establishes that "[a]ll offenses defined in this code in which the mental culpability requirement is expressed as 'knowingly' . . . are declared to be general intent crimes."

"knowingly" *and* the mental culpability element "with specific intent to evade the due course of justice."[6]

■ The legislature redesignated the offense of "escape" as a general intent crime to be effective within the context of section 18-8-207. The crime of "holding hostages" includes as an essential element the general intent crime of "escape." No additional mental state is specified for the crime of "holding hostages." That crime, as well as the crime of "escape," is one of general rather than specific intent.

■ The district court, therefore, erred in concluding that the crime proscribed by section 18-8-208, C.R.S. 1973 (now in 1978 Repl. Vol. 8), was one of specific intent.[7] We disapprove its ruling to that effect.

## II.

We have considered the arguments made by the defendant with respect to the state of the record designated by the People on appeal and find them to be without merit.

Ruling disapproved.

---

[6] The defendant's reliance on *United States v. Bailey*, 585 F.2d 1087 (D.C. Cir. 1978), and *United States v. Nix*, 501 F.2d 516 (7th Cir. 1974), for this proposition is misplaced. *Bailey* and *Nix* are similar to *People v. Gallegos, supra,* in that each case dealt with a criminal statute which utilized the term "escape" but which did not specify a culpable mental state applicable to the offense. In each case, the mental state "intent to avoid confinement" was read into the criminal statute. However, neither *Bailey* nor *Nix* addressed the question posed by the instant case, *viz.,* the conflict between a judicially-imposed mental culpability element and a subsequent, legislatively-substituted, lesser mental culpability element. (We note further that the United States Supreme Court, subsequent to oral argument in this case, reversed the decision of the circuit court in *Bailey, supra,* holding that the mental state "intent to avoid confinement" is *not* an essential element of the federal criminal statute in question. *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).)

[7] The People concede a technical failure to preserve, for purposes of appeal, their challenge to the trial court's instructions on the affirmative defense of inability to form specific intent by reason of voluntary intoxication. We note only that such instructions are inappropriate with respect to general intent offenses, such as the crime of "holding hostages." *See* section 18-1-804(1), C.R.S. 1973 (now in 1978 Repl. Vol. 8). (We have recently upheld, on constitutional grounds, section 18-1-804(1)'s limitation of the defense of voluntary intoxication to the negation of *mens rea* in specific intent crimes. *People v. DelGuidice.* 199 Colo. 41, 606 P.2d 840 (1979).)